# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

OKLAHOMA CHAPTER OF THE AMERICAN
ACADEMY OF PEDIATRICS (OKAAP), *et al.*,

        Plaintiffs,

vs.

MICHAEL FOGARTY, Chief Executive Officer
of the Oklahoma Health Care Authority (OHCA),
*et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

**F I L E D**

JUN 2 5 2001

Phil Lombardi, Clerk
U.S. DISTRICT COURT

No. 01-CV-0187-B (J)

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION TO CHANGE VENUE

The defendants have filed a motion to change the venue of this action, pursuant to Fed. R.

Civ. P. 12(b)(3), requesting this Court transfer this case to the Western District of Oklahoma.

Defendants assert that venue is "improper in the **Eastern** District of Oklahoma and the Western

District of Oklahoma is the proper venue." Def. Motion at 2. For the reasons set forth below, the

motion should be denied. Venue is proper in the Northern District and plaintiffs' choice of forum

should not be disturbed.

## I.

## INTRODUCTION AND BACKGROUND

Plaintiffs filed this action on March 19, 2001, against officials of the Oklahoma Health Care

Authority, to enforce federal law requirements for medical, dental, developmental, mental and

behavioral health and rehabilitation required under the Social Security Act of the United States

("Title XIX"), 42 U.S.C. § 1396, and the State Children's Health Insurance Program ("S-CHIP"),

Title XXI, 42 U.S.C. § 1397aa. On or about May 25, 2001, defendants filed a Motion to Change

Venue, asserting venue is "improper in the Eastern [*sic*] District." For purposes of this response,



Plaintiffs' Response to Defendants' Motion to Change Venue                          Page 2

plaintiffs presume defendants are actually objecting to venue in the Northern District of Oklahoma

where this action was filed.  Defendants' two-page motion and brief cites no law[1] in support of its

contention that venue is improper in the Northern District (or, for that matter, in the Eastern District).

Contrary to defendants' motion, venue is proper in the Northern District.  Substantial events which

give rise to this action occurred and continue to occur in the Northern District where OHCA board

meetings have occurred, three of the six plaintiff families and 90,000 potential class members live.

Furthermore, some individual defendants were served in this district and witnesses and records are

located in this district.

    The plaintiffs have brought this action to address the defendants' failures to comply with

federal law requirements for health services to Oklahoma children.  This is a statewide problem and,

indeed, the unlawful harms imposed on Oklahoma children are widespread and vivid in the Northern

District.  The six families who are plaintiffs reside in all parts of the state and all three federal

districts.  Importantly, three of those families live in the Northern District and their denial of care

occurred and continues to occur in this district.  Plaintiffs' Complaint at ¶¶ 12, 15 and 17.  Moreover,

nearly 90,000 children who are potential class members live in the Northern District.

    Tulsa Community Action Project (TCAP) is located in the Northern District; and two of the

four officers of Oklahoma Chapter of the American Academy of Pediatrics (OKAAP) reside and

work in the Northern District, one in the Eastern District and one in the Western district.  Plaintiffs'

Complaint at ¶¶ 10 and 11.

---

[1]    Defendants' sole cite in its brief is in support of its assertion the State of
Oklahoma is the real and proper party to this action.  Plaintiffs incorporate by reference their
response to this issue set forth in their reply to defendants' objections to being assessed costs.
Plaintiffs' Reply to Defendants' Objection to Being Assessed the Cost of Service, 6/11/01.

Similarly the defendants act and reside all over the state. Two of the seven Oklahoma Health Care Authority (OHCA) board members live in and were served in the Northern District, two in the Eastern District, and three in the Western District.

The OHCA Board meets and makes policy decisions all over the State of Oklahoma. For example, the next five meetings of the OHCA Board have been set for the following dates and locations: October 4, 2001- Tulsa; September 6, 2001 - Poteau; August 9, 2001 - Lone Wolf; and July 2001- Tahlequah. Defendants' decisions have taken place in the Northern District. Should this Court have concerns as to whether the OHCA board members have made decisions in the Northern District, the Court should order defendants to file the minutes of the Board meetings which will reflect where the Board has met since the creation of OHCA as the state's Medicaid agency. Clearly, "a substantial part of the events [and] omissions giving rise to the claim[s]" set forth in this matter occurred in the Northern District.

## II.

## ARGUMENT

### A.    VENUE IS PROPER HERE

Under 28 U.S.C. § 1391(b),[2] an action brought under federal question jurisdiction may be brought in any of the following districts:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a <u>substantial part of the events or omissions giving rise to the claim occurred,</u> or a substantial part of the property that is the

---

[2]    While defendants' motion cites "42 U.S.C. § 1391(b)," plaintiffs assume this is an error -- 28 U.S.C. § 1391(b) is the appropriate venue statute.

subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* (emphasis added). Plaintiffs invoke venue in this District under Section 1391(b)(2).[3]

Before 1990, Section 1391(b)(2) authorized venue only in "the judicial district where ... the claim arose." The 1990 amendments, however, made venue proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred." The committee notes to Section 1391 make clear that under this section, venue may lie in several districts.

> The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial. ... If the selected district's contacts are "substantial," it should make no difference that another's are more so, or the most so.

28 U.S.C.A. § 1391, Commentary on 1988 and 1990 Revisions of Section 1391 at 9. Thus, a claim no longer attaches in only one district; under the new, more permissive language, a claim occurs in any district where a "substantial part" of the events, acts and omissions occurred, even if more activity occurred in another district. *Merchants National Bank v. Safrabank*, 776 F. Supp. 538, 541 (D. Kan. 1991) (quoting Commentary on 1990 Revisions at 9). *See also, Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173 (D. Kan. 1998).

The events, acts and omissions which constitute the Title XIX and XXI **claims** alleged by plaintiffs **occur where the children reside**. These are statewide issues. Although they are set in motion by defendants' policies and practices, injuries actually occur in the communities where the

_____

3    Venue would also be proper in the Northern District under 28 U.S.C. § 1391(b)(1) based upon defendants' "residence." For purposes of venue, public officials sued in their official capacity "reside" in the judicial district where he/she performs their official duties. *See Republican Party of North Carolina v. Martin*, 682 F. Supp. 834 (N.D. N.C. 1988). OHCA board members and some officials perform official duties in the Northern District and therefore reside in this district for purpose of venue.

Plaintiffs' Response to Defendants' Motion to Change Venue                    Page 5

children who are not receiving mandated care reside. Under federal law, venue attaches in the district where the harm occurs not where government officials make policy decisions. *Andrade v. Chojnacki*, 934 F. Supp. 817 (S.D. Tex 1996). As stated in the complaint, it is clear that a "substantial part" of the events or omissions giving rise to the plaintiffs' claims occurred and continue to occur in the Northern District. See Plaintiffs' Complaint ¶¶ 2-4, 10-12, 15, 17 and 20. Venue is clearly proper in the Northern District under 28 U.S.C. § 1391(b)(2).

**B.    THE PRESUMPTION IN FAVOR OF PLAINTIFFS' CHOICE OF FORUM IN THE NORTHERN DISTICT IS NOT OVERCOME AND SHOULD NOT BE DISTURBED.**

Without cite to any statute, federal rule or case law, defendants alternatively argue that the forum of this action should be changed for convenience. Plaintiffs presume this argument is based upon 28 U.S.C. § 1404, the "convenient forum" statute. But the law is, as the U.S. Supreme Court has long held, that plaintiffs' chosen forum should **not** be disturbed unless the choice would "establish such oppressiveness and vexation to the defendant as to be all out of proportion to plaintiffs' convenience." *Koster v. American Lumberman's Mutual Casualty Co.*, 330 U.S. 518, 524 (1947). *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (Among factors to consider is the plaintiff's choice of forum.) Furthermore, defendants bear the burden of establishing the Northern District is inconvenient. *Schneidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1991). These are very high standards that defendants have not come close to meeting.

When faced with a choice among forums, courts must consider at least nine public and private factors which must be balanced against the strong presumption that plaintiffs' chosen forum is appropriate. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). Private factors include:

1.    The relative ease of access to sources of proof,



   2.    Availability of compulsory process for attendance of unwilling, and the cost of
         obtaining attendance of willing, witnesses,

   3.    Possibility of viewing the premises, if appropriate, and

   4.    All other practical problems "that make trial of a case easy, expeditious and
         inexpensive."

Public factors include:

   5.    The administrative difficulties flowing from court congestion,

   6.    The "local interest in having localized controversies decided at home,"

   7.    The interest in having the trial of a diversity case in a forum at home with the law
         that will govern the action,

   8.    Avoidance of unnecessary problems in conflict of law or application of foreign law,
         and

   9.    Unfairness of burdening citizens in an unrelated forum with jury duty.

*Id. See also, Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). Defendants have

the burden of persuasion on each of these factors and defendants must show that "the balance of

conveniences weighs heavily in favor of the transfer in order to overcome the strong presumption in

favor of the plaintiffs' choice of forum." *Royal Queentex Enterprises v. Sara Lee Corp.*, 2000 WL

246599 (N.D. Cal. Mar. 1, 2000) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d

834, 843 (9th Cir. 1986); *Piper Aircraft Co. v. Revno*, 454 U.S. 235, 255-56 (1981)). Moreover,

defendants must show that transfer to the Western District would eliminate inconvenience for **all**

parties, not merely shift inconvenience to the other party. *Decker Coal Co.*, 805 F.2d at 843.

Defendants implicate few if any of these factors to overcome the "strong presumption" of plaintiffs' choice of forum, and satisfy none. Most of these factors either do not apply, are neutral, or favor the Northern District. The case is not a diversity case, there is no issue of conflict of law, and defendants have made no allegation that plaintiffs' statewide claims are a "localized controversy" that should be decided "at home." (Factors 6, 7, 8) Plaintiffs have made no request for a jury trial; should there be a jury, citizens of the Northern District are as much related to the subject matter here as are jurors anywhere in Oklahoma. (Factor 9) Nor have defendants made any allegation regarding the relative court congestion of either forum. (Factor 5) Plaintiffs cannot imagine there will be any judicial inspections of premises in this case (Factor 3); and if there were, OHCA's officials' offices or conference rooms in Oklahoma City would not be the site of inspection.

Regarding ease to access of sources of proof (Factor 1), some documents will be in Oklahoma City. But many others will be at hospitals, doctors' offices, and the SoonerCare's managed care companys' offices,[4] which are located in the Northern District and throughout the state. Regardless of which forum hears the case, defendants (and plaintiffs) will have to ship documents and other sources of proof. At best, this factor is neutral.

Compulsory process of witnesses (Factor 2) is also neutral because a U.S. District Court in Oklahoma may serve subpoenas and compel the attendance of witnesses who are in Oklahoma even if they resided more than 100 miles from the Court. Fed. R. Civ. P. 45(b)(2) ("[A] subpoena may be served … at any place within the state where a state statute … permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the [trial]." In Oklahoma, a subpoena

---

4        For example, the two largest health maintenance organizations contracting with OHCA to provide services to children eligible for health benefits have offices and maintain records in Tulsa.

Plaintiffs' Response to Defendants' Motion to Change Venue                    Page 8

may be issued to require attendance at trials and depositions "at any place within the state." 12 O.S. § 2004.1.

Defendants' other concerns boil down to making trial easier, more expeditious and inexpensive (Factor 4), but only for defendants. Defendants erroneously assert all records and witnesses reside and work in Oklahoma City. While defendants may restrict the defense to Oklahoma City records and witnesses, plaintiffs anticipate exhibits and witnesses will be from all over the state, including, in substantial part, the Tulsa area. Transferring this case will merely shift rather than eliminate inconvenience for witnesses, an insufficient basis for transfer of this case to the Western District.

Finally, transferring the case to Oklahoma City would inconvenience plaintiffs in a way that does not inconvenience defendants. Plaintiffs have chosen counsel with offices in Tulsa. If this case is moved to Oklahoma City, plaintiffs' counsel do not have an office in Oklahoma City to meet with their clients before, during and after settlement and trial where privileged communications can occur. *See Bevil v. Smit Americas*, 883 F. Supp. 168, 171 (S.D. Tex. 1995) (court will give weight to convenience of counsel "if the Plaintiff chose local counsel to bring the suit. This fact goes to the Plaintiff's choice of forum which is entitled to great deference."). Defendants, who are represented by the Attorney General, do not share this concern because the Attorney General maintains offices in Tulsa.

## CONCLUSION

For the reasons stated above, plaintiffs respectfully request that defendants' motion for change of venue be denied in full and that this action proceed in the Northern District, expeditiously to judgment.

Respectfully submitted,

By: _____

Patricia W. Bullock, OBA #9569
Louis W. Bullock, OBA #1306
Michael J. Lissau, OBA #18098
Bullock and Bullock
320 South Boston, Suite 718
Tulsa, Oklahoma 74103-3783
Phone: 918-584-2001
Facsimile: 918-582-7302

Thomas K. Gilhool
Public Interest Law Center
  of Philadelphia
125 S. 9th Street, Suite 700
Philadelphia, Pennsylvania 19107
Phone: 215-627-7100

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was mailed, postage prepaid, on the 25th day of June, 2001, to:

Andrew Tevington
James Robinson
Office of the Attorney General
Litigation Division
4545 N Lincoln Blvd Ste 260
Oklahoma City OK 73105-3498

_____
Patricia W. Bullock

Resp-change-venue