UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA CHAPTER OF THE AMERICAN ACADEMY OF PEDIATRICS (OKAAP), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL FOGARTY, Chief Executive Officer of the Oklahoma Health Care Authority (OHCA), *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) Case No. 01-CV-0187-CVE-SAJ ) ) ) ) ) ) ) |

## OPINION AND ORDER

Now before the Court is Defendants' Motion for Relief from Judgment (Dkt. # 411). On May 26, 2006, the Court held an evidentiary hearing and heard argument to determine the defendants' compliance with the Court's May 19, 2005 Final Judgment and Permanent Injunction. Defendants contend that they have fully complied with the Court's ruling and they request dismissal of the Court's supervision as a result. The basis of their contention (as well as their motion for relief from judgment) is a report submitted by Mercer Government Human Services Consulting ("Mercer") which purports to show that Oklahoma's Medicaid provider reimbursement rates assure reasonably prompt access to health care for minor children in the Oklahoma Medicaid Program.

The Final Judgment and Permanent Injunction required, among other things, that OHCA (1) begin reimbursing physicians at 100% of the rate paid by Medicare; (2) OHCA negotiate a contract "with a nationally recognized economic consulting firm to conduct a study to determine the fee-for-service reimbursement rates necessary to assure reasonably prompt access to health care for minor children in the Oklahoma Medicaid Program while also complying with the utilization and efficiency requirements of 42 U.S.C. §1396a(a)(30)(a)"; and (3) "institute a fee-for-service fee

schedule determined by the consulting firm as necessary to assure reasonably prompt access to health care for minor children in the Oklahoma Medicaid Program." Dkt. # 288, ¶¶ 1, 2, 5. The order specified that the study "include a determination and analysis of physician costs and overhead data in comparison with Medicaid reimbursement rates. . . [and] a determination and analysis of commercial payer rates paid to providers." Id., ¶ 4.

OHCA contracted with Mercer to perform the study, and defendants submitted Mercer's "Allowable Fee Comparison and Survey for Select Provider Specialties" (the "Mercer Report") to this Court on March 3, 2006. Seventh Status Report, Dkt. # 385, Ex. A. Defendants argue that the Mercer Report shows Oklahoma's rates paid at the time of trial compare favorably to rates paid by commercial payers, and thus, the rates paid by the Medicaid program did not deny access to Medicaid children. Mercer essentially concluded that "the fees paid by OHCA seemed to be reasonably sufficient to assure equal access in most specialties" and "the real issue facing OHCA's pediatric specialty access question, in our opinion, is linked more to the general scarcity of physicians in Oklahoma than to Medicaid fee level." Id. at 4; see id. at 45. Mercer recommended that "maximum reimbursement should be no more than 100 percent of MAF [Medicare Allowable Fees]" and that "reimbursement does not necessarily need to vary by provider specialty." Id. at 46-47. Essentially, Mercer's ultimate recommendation is that the defendants either keep Medicaid provider rates at the current level of 100% of Medicare allowable, or reduce Medicaid provider rates to 2004 levels. Defendant Michael Fogarty, Chief Executive Officer of the OHCA, testified at the May 26, 2006 hearing that OHCA has no intention of rolling back the Medicaid reimbursement rates to less than 100% of Medicare.

The Court finds that the Mercer Study is not valid and does not support a finding that defendants have complied with the Court's Final Judgment and Permanent Injunction or that defendants are entitled to relief from judgment. The Court cannot endorse the report: not only is it contrary to the Court's findings that Oklahoma's 2004 Medicaid provider rates were insufficiently low to comply with 42 U.S.C. § 1396a(A)(30)(A), but also it is based upon unreliable data. As plaintiffs argued, the conclusions of the Mercer Report are facially invalid, as Mercer failed to utilize the correct legal criteria set forth in the Court's Findings of Fact and Conclusions of Law, Dkt. # 272. In particular, Mercer conducted no analysis of whether current rates are sufficient to assure the provision of "reasonably prompt" care.

Mercer's recommendations are based on faulty provider rate analysis whereby Mercer used statistically invalid data to convert Medicaid rates at 72% and 90% into more than 145% of Medicare. The analysis compared payments to physicians under Medicaid, Medicare, and commercial benefit plans and essentially evaluated the cost of service to the plan sponsor, not to the physician providing the service. Mercer also included the uninsured in its calculations and did not consider the level of Medicaid participation by Oklahoma's pediatricians. The individual at Mercer who was in charge of the study admitted at the May 26, 2006 hearing that the physician survey data relied upon by Mercer was not statistically significant.

Relief under Rule 60(b) of the Federal Rules of Civil Procedure "is extraordinary and may only be granted in exceptional circumstances." Zurich North America v. Matrix Serv., Inc., 426 F.3d 1281, 1289 (10th Cir. 2005). Under the rule, "the court may relieve a party or a party' legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a

new trial under Rule 59(b); . . ." Fed. R. Civ. P. 60(b)(2). Defendants claim that the Mercer Report is "newly discovered evidence" warranting relief from the May 19, 2005 Final Judgment and Permanent Injunction.

> For newly discovered evidence to provide a basis for a new trial under Rule 60(b)(2), the moving party must show "(1) the evidence was newly discovered since the trial; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence [is] material; and (5) that a new trial[ ] with the newly discovered evidence would probably produce a different result."

Zurich North America, 426 F.3d at 1290 (quoting Graham v. Wyeth Lab., 906 F.2d 1399, 1416 (10th Cir.1990)).

Plaintiffs contend, and the Court finds, that (1) the evidence offered is not newly discovered, (2) the defendants were not diligent in discovering the evidence, and (3) a new trial with the evidence would probably not produce a different result. The 2004 Medicaid rates were available at the time of trial -- Mercer's manipulation of those rates is not "newly discovered evidence." In this regard, the Court is persuaded by the report of plaintiffs' expert, who opined that "[t]he calculations that lead to the conclusion that on balance Medicaid compensates better than commercial insurers . . . contradicts every other study of its kind." Pl. Stmt. of Compliance, Dkt. # 418, Ex. D at 7. In any event, plaintiffs argue that the underlying data used by Mercer is and was readily available, and defendants could have hired Mercer or some other entity as an expert on rate reimbursement to perform the analysis before the trial.

Finally, the Court notes that there is no need for relief from judgment under the circumstances present here, where defendants increased the Medicaid reimbursement rate to 100% of Medicare, as ordered by the Court, and have expressed no intention to reduce the rate below that level. There is a need for reliable evidence demonstrating the effect of the 100% reimbursement rate

since the OHCA instituted the rate increase. Specifically, there is a need for reliable data comparing physician participation in the Medicaid program in 2004 and physician participation as a result of the rate increase. At the hearing, the parties explored the possibility of the Court ordering a second compliance hearing, after a 120-day discovery period, to determine whether the 100% rate assures the "reasonably prompt access" required by statute, or whether the Court should allow the OHCA an opportunity to commission a new study which would be of assistance to the Court in determining whether defendants are in compliance with the Court's mandate. The Court hereby directs defendants to file notice, **no later than June 30, 2006,** as to its preference for one of these two options. The Court will then set a schedule accordingly.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Relief from Judgment (Dkt. # 411) is hereby **denied**.

**DATED** this 6th day of June, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT